## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ROY WYATT and DONTE MCNEIL,  :
   Plaintiffs,     :
            :
 v.          :   **No. 19-cv-5460**
            :
DEPARTMENT OF     :
PROBATION AND PAROLE, *et al.*, :
   Defendants.    :

## MEMORANDUM

**Joseph F. Leeson, Jr.**           **May 8, 2020**
**United States District Judge**

   Plaintiffs Roy Wyatt and Donte McNeil, proceeding *pro se*, bring this civil rights action pursuant to 42 U.S.C. § 1983, against the Department of Probation and Parole, John Wetzel (Secretary of Department of Corrections) and Agent Garner (Parole Agent).  Each Defendant is sued in their individual and official capacities.  Plaintiffs have also filed a Motion for Appointment of Counsel (ECF No. 9) and Wyatt has filed a Declaration in Support of Preliminary Injunction and TRO.[1]  (ECF No. 16.)  For the following reasons, the Court will dismiss their Complaint in part with prejudice for failure to state a claim, deny the request for appointment of an attorney at this time, and deny Plaintiffs' request for issuance of a preliminary injunction and/or temporary restraining order.

---

[1] The Declaration seeks relief on behalf of Wyatt, and it is signed only by Wyatt.  (ECF NO. 16 at 15.)

I.     **FACTUAL ALLEGATIONS**

Wyatt and McNeil filed this matter based on events which took place while they were confined as technical parole violators at SCI-Phoenix.  (ECF No. 2 at 2, 4, 14, 16.)[2]  According to the Pennsylvania Department of Corrections Inmate/Parolee Locator, both Wyatt (Parole No. 724AD) and McNeil (Parole No. 697IA) have been released from SCI-Phoenix, and they are both currently on parole.  *See* Pennsylvania Department of Corrections ("DOC"), Parolee Locator (Parolee Nos. "724AD" (Wyatt) and "697IA" (McNeil); http://inmatelocator.cor.pa.gov (last visited May 5, 2020).  *See generally* Fed. R. Evid. 201; *Bracey v. Rendell*, Civ. A. No. 11-217E, 2012 WL 226871, at *1 n.1 (W.D. Pa. Jan. 25, 2012) (taking judicial notice of DOC inmate locator).

The Complaint avers that on September 13, 2019, Wyatt received a phone call from Agent Garner advising Wyatt that Garner would be visiting him at his home.  (ECF No. 2 at 16.) Wyatt avers that minutes later, he was arrested by Garner without reason and taken to the parole office located in Philadelphia.  (*Id.*; *see also* ECF No. 16 at 5.)  At the parole office, Garner informed Wyatt that someone had called the parole hotline and made an assault allegation against him.  (ECF No. 2 at 16-17; ECF No. 16 at 5.)  Garner allegedly told Wyatt that he had "no rights in this matter and that he [would] have to be placed back in prison regardless because it is the departments [sic] policy."  (ECF No. 2 at 20.)  Wyatt asserts he was arrested on false allegations and Garner ignored the falsity of the allegations and failed to complete an investigation.  (*Id.* 20-21.)  He avers that he was "arrested and placed back into prison without any due process rights or equal protection of the law," and the Department of Probation and Parole, through its agents, are arresting parolees on "false trumped up charges."  (*Id.* at 17, 20.)

---

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

When questioned by Garner as to whether he was taking his prescribed mental health medications, Wyatt responded that the medication "Abilify" was making him sick so he stopped taking it, explaining to Garner that he had a "14th Amendment right to refuse medications absent a court order." (*Id.* at 17.) Wyatt avers that the refusal to take his mental health medications was "one of the reasons [why] he was placed back in prison" and asserts "just like hundreds of other parolees on parole," he was placed in handcuffs and taken to SCI-Phoenix, "a supermax level 5 deathrow prison for refusing medication absent a court order." (*Id.* at 17, 18.) The Complaint further avers that Wyatt discussed this issue with the mental health staff at the prison, and the staff took him off of all of his medications, and "instructed him to file [an] action against the Parole department." (*Id.* at 19.) The Complaint alleges that "there are hundreds of other Technical Parolees who are placed in prison as a punishment at the hands of the defendants creating policy that infringe upon the rights of Parolees to refuse [medications] absent a court order or placed in prison for simply having a mental illness that the defendants agent [doesn't] understand." (*Id.*)

The Complaint further avers that "[p]laintiff like hundreds of other technical parolees" was housed in a solitary confinement unit due to overcrowding. (*Id.* at 17.) The Complaint asserts that "[p]laintiffs and other parolees [were] denied yard for weeks" and "denied mental health out of cell programming." (*Id.* at 18.) Wyatt alleges that he was housed in cells with very little to no light coming through the cell windows, was served cold food in insufficient portions, and had no bedding. (*Id.* at 18.) The Complaint also avers that "the defendant allowed the housing of seriously mentally ill prisoners to be housed in cells with other Parolees [who were] detoxing off of dangerous drugs" which allegedly caused "mentally ill parolees [to be] violently assaulted by the detoxing parolee." (*Id.*) Wyatt avers that on September 23, 2019, he requested

3

a grievance, but was denied and allegedly told by Officer John Doe "that if he file[s] a grievance he is going to make sure that his parole get[s] revoked." (*Id.*)

Finally, the Complaint asserts that "Bill 100 Act 122" precludes the Department of Parole and Probation from bringing parolees back to state prison on minor technical parole violations. (*Id.* at 21.) Wyatt and McNeil contend that Wetzel and the Department of Parole and Probation have failed to comply with the directives of Act 122 by alleging that they should have been "diverted to one of the 3 less punitive options than return to a SCI." (*Id.*)

The Complaint asserts the following due process violation claims:

- Garner and the Pennsylvania Department of Parole and Probation arrested Wyatt and McNeil and placed them in a super max level 5 state prison with deathrow inmates under a false report without any investigation or evidence to support the false allegations.

- After receiving sworn documents that the allegations against Wyatt and McNeil were false, Garner and the Pennsylvania Department of Parole and Probation denied them an immediate speedy hearing to correct the wrongful imprisonment.

- Garner and the Pennsylvania Department of Parole and Probation placed Wyatt in a state prison for months for refusing to take mental health medications and Wyatt was denied a hearing regarding the condition that he take the medication.

- Garner, Wetzel, and the Department of Parole and Probation created and enforced policy, special conditions, or rules that infringed upon Wyatt's right to refuse unwanted medications.

- Wetzel and the Department of Parole and Probation created policy and rules allowing for false allegations to be filed against Wyatt, McNeil and thousands of other parolees

4

which resulted in those parolees being placed back in prison without any investigation
or evidence to support false allegations.

- Wetzel and the Department of Parole and Probation have no way to compensate
  Wyatt, McNeil, and thousands of other parolees who sit in prison for months fighting
  false allegations.  Plaintiffs aver that they lost everything and that Defendants'
  policies forces Plaintiffs and their families into poverty and homelessness.

- Wetzel and the Department of Parole and Probation violated Wyatt, McNeil and
  thousands of other technical parole violators due process rights when they placed
  them back in prison without judicial oversight in violation of Bill 100 Act 122 that
  states that technical parole violators should only be diverted to Community
  Correctional Centers, Parole Violator Centers, County Contracted Jails, or ankle
  monitors. The Defendants' actions led to overcrowding and violations of plaintiffs'
  constitutional rights.

(*Id.* at 22-23.)

The Complaint further alleges an equal protection violation.  (*Id.* at 23.)  Specifically, the
Complaint avers that Wetzel and the Department of Parole and Probation are not applying Act
122 to Plaintiffs and other technical parole violators as the law instructs them to do.  (*Id.*)  Wyatt
and McNeil assert that Defendants placed them in prison as a means of punishment to get around
the implication of Act 122.  (*Id.*)

The Complaint also alleges cruel and unusual punishment.  (*Id.*)  Specifically, the
Complaint alleges that Wyatt was impermissibly placed in a super max level 5 deathrow prison
for refusing to take medications absent a judge order.  (*Id.*)  Wyatt was allegedly subjected to

cold cells, cold meals, and lack of mental health programs.  (*Id.*)  Wyatt avers that he became

very depressed and was denied the opportunity to see mental health staff.  (*Id.*)

Wyatt and McNeil seek punitive damages against each Defendant as well as

compensatory damages and injunctive relief.  (*Id.* at 15, 25.)  Plaintiffs aver that they are entitled

to compensatory damages for their financial loss, psychological, mental and emotional injuries.

(*Id.* at 25.)  Finally, Wyatt and McNeil seek injunctive relief requiring Defendants "to adhere to

the act 122 and to . . . implement the law as it is written and to immediately stop placing

[t]echnical parole violators back in the prison system."  (*Id.*)  Plaintiffs seek an order directing

Defendants "to stop placing parolees back into prison for executing their right to refuse

medications" as well as an "injunction against the defendants to not retaliate, harass the plaintiffs

in this action, their family, friends and loved ones for filing this action."  (*Id.* at 25.)

On February 27, 2020, Plaintiff Wyatt filed a Declaration in Support of Preliminary

Injunction and TRO.[3]  (ECF No. 16.)  In so doing, Wyatt seeks relief against the Department of

Probation and Parole, Agent Rosario, Agent Garner, Scott A. Wolf, and all of their supervisors.

(*Id.* at 3.)  More specifically, Wyatt seeks an order restraining the foregoing individuals from

"retaliating against [him] and denying the reunification with his loved ones by denying his home

plan."  (*Id.*)  Wyatt also seeks relief in the form of restraining "Agent Rosario from having any

---

[3] In his Declaration, Wyatt provides additional factual information with respect to his parole violation.  More specifically, Wyatt avers that he had a parole violation hearing on November 13, 2019.  (ECF No. 16 at 5.)  Although Wyatt asserts that Garner had requested that the charges against him be dismissed, Wyatt received a guilty verdict from the Department of Probation and Parole on December 10, 2019.  (*Id.* at 5-6.)  The verdict information received from the Department of Probation and Parole also indicated that Wyatt was "considered a threat to the safety of the community."  (*Id.* at 6.)  On December 12, 2019, Wyatt was transferred to the Kintock Group halfway house.  (*Id.*)

contact with [him] and his wife, friends or any plaintiff now or in the future who will be or who are currently apart [sic] of this 1983 Civil Rights Action." (*Id.*)

## II.     STANDARD OF REVIEW

The Court granted Wyatt and McNeil leave to proceed *in forma pauperis* because it appeared that they were both incapable of paying the fees to commence this civil action.[4] (ECF No. 15.)  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it is frivolous or it fails to state a claim.  A complaint is frivolous under § 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Wyatt and McNeil are proceeding *pro se*, the Court construes their allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.     DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[4] However, as Wyatt and McNeil were prisoners at the time of filing this matter, they were advised that they would be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b); ECF No. 15.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Claims on Behalf of Others

It is unclear to the Court whether Wyatt and McNeil are attempting to assert claims on behalf of others by including language in the Complaint referring to "hundreds of other parolees on parole." (ECF No. 2 at 17-19.) For example, the Complaint avers that "Plaintiff like hundreds of other technical parolees was house[d] in a solitary confinement unit (RHU) due to over crowding" and "Plaintiffs and other parolees [were] denied yard for weeks . . . hundreds of other parolees [were] denied mental health out of cell programming." (*Id.* at 17-18.)

"Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court." *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see also* 28 U.S.C. § 1654; *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). Accordingly, any claims made by Wyatt and McNeil on behalf of others will be dismissed with prejudice. Similarly, to the extent they intended to pursue this case as a class

action, which is not clear, "*pro se* litigants are generally not appropriate as class representatives." *Hagan v. Rogers*, 570 F.3d 146, 155-56 (3d Cir. 2009); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (per curiam) ("Lewis, who is proceeding *pro se,* may not represent a putative class of prisoners.").

### B.   Claims for Injunctive Relief

All of the claims in the Complaint pertain to Wyatt and McNeil's confinement at SCI-Phoenix.  However, both Wyatt and McNeil are currently on parole, having been released from SCI-Phoenix.  *See* Pennsylvania Department of Corrections, Parolee Locator (Parolee Nos. "724AD" (Wyatt) and "697IA" (McNeil)); http://inmatelocator.cor.pa.gov (last visited May 5, 2020).  "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."  *Crawford v. McMillan*, 660 F. App'x 113, 115 (3d Cir. 2016) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993) (finding prisoner's transfer or release from prison moots claims for injunctive or declaratory relief as prisoner no longer subject to allegedly unconstitutional conditions)).  Accordingly, any claims for injunctive relief are dismissed as moot.

### C.   Claims Against the Pennsylvania Department of Probation and Parole

The Pennsylvania Board of Probation and Parole is immune from suit under the Eleventh Amendment.  *See Spuck v. Pa. Bd. of Prob. and Parole*, 563 F. App'x 156, 158 (3d Cir. 2014) (per curiam) ("As the District Court correctly determined, the Eleventh Amendment affords the [Pennsylvania Board of Probation and Parole] protection from suit in an action brought pursuant to 42 U.S.C. § 1983" (citing *Harper v. Jeffries*, 808 F.2d 281, 284 n.4 (3d Cir. 1986))).  Furthermore, even if the Eleventh Amendment did not bar these claims, the Board of Probation and Parole is also not a "'person' within the meaning of section 1983."  *Fenton v. Pennsylvania*

9

*Dep't of Corr.*, Civ. A. No. 18-5484, 2019 WL 398929, at *4 (E.D. Pa. Jan. 31, 2019) (citing

*Thompson v. Burke*, 556 F.2d 231, 232 (3d Cir. 1977)).  Accordingly, Wyatt and McNeil cannot

maintain their section 1983 claims against the Pennsylvania Department of Probation and Parole.

### D.  Official Capacity Claims

As indicated by the Complaint, Wetzel and Garner are each being sued in their official

capacities.  (ECF No. 2 at 2-3, 16.)  Wetzel and Garner, in their official capacities, are also

entitled to Eleventh Amendment immunity.  Official-capacity suits are "only another way of

pleading an action against an entity of which an officer is an agent."  *Monell v. New York City*

*Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978).  In an official-capacity suit, the entity

of which the officer is an agent is the real party in interest.  *Kentucky v. Graham*, 473 U.S. 159,

166 (1985).  As Garner is an employee of the Pennsylvania Department of Probation and Parole,

and Wetzel is an employee of the Pennsylvania Department of Corrections,[5] the claims against

each of them in their official capacities are really claims against the Commonwealth and, as

such, are barred by the Eleventh Amendment.[6]  Accordingly, the claims against Wetzel and

Garner in their official capacities are dismissed with prejudice.

---

[5] Although not specifically named as a defendant in this matter, the Pennsylvania Department of
Corrections "shares in the Commonwealth [of Pennsylvania's] Eleventh Amendment
immunity."  *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *Dickerson v. SCI
Graterford*, 453 F. App'x 134, 137 (3d Cir. 2011) (per curiam).

[6] Although official capacity claims requesting prospective injunctive relief are not barred by the
Eleventh Amendment, *see J.C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (citing *Ex parte
Young*, 209 U.S. 123 (1908)), as discussed more fully above, all claims for injunctive relief in
this matter have been dismissed as moot because both Wyatt and McNeil have been released
from SCI-Phoenix.

### E.   Claims Based on Grievances

In their Complaint, Wyatt and McNeil express dissatisfaction with the grievance process. (ECF No. 2 at 18.)  "Prison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Because there is no right to a grievance process at all, a claim under § 1983 based on the mishandling of a grievance cannot be plausible.  Accordingly, any claims based on grievances are dismissed with prejudice under § 1915(e)(2)(B)(ii).

### F.   Due Process Claims

Based on the factual allegations set forth in the Complaint, it appears that the § 1983 claims against Garner primarily concern assertions that Wyatt was arrested on the basis of false allegations and an allegedly improper reason, i.e. Wyatt's refusal to take mental health medications.  (ECF No. 2 at 18-21.)  Wyatt avers that he was "arrested and placed back into prison without any due process rights or equal protection of the law," and the Department of Probation and Parole, through its agents, are arresting parolees on "false trumped up charges." (*Id.* at 17, 20.)  Although there do not appear to be any factual allegations on the part of McNeil against Garner, the Complaint asserts a claim for relief that "Garner and the Pa Department of Parole and Probation had plaintiff Wyatt and McNeil arrested and placed [them] in a super max level 5 . . . under a false report . . . without anything to [support] the false allegations."  (*Id.* at 22.)  Accordingly, it appears that McNeil's claim is also based on false allegations.

The favorable termination rule bars all of Plaintiffs' due process claims.  Under the favorable termination rule, a Section 1983 claim may not be used to challenge "the fact or

duration" of a plaintiff's confinement. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (when a state prisoner is challenging the fact or duration of his confinement, his sole federal remedy is a writ of habeas corpus, not a § 1983 action)).  More specifically, "a harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable under Section 1983 unless that conviction or sentence was "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  The United States Court of Appeals for the Third Circuit has interpreted *Heck* to mean that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  *Gilles v. Davis*, 427 F.3d 197, 208-09 (3d Cir. 2005).  If the success of Plaintiffs' Section 1983 claim necessarily requires a finding regarding the "invalidity of the Parole Board's decision to revoke [] parole," the claim fails.  *Williams*, 453 F.3d at 177;[7] *Burton v. Delaware Cty. Court House*, Civ. A. No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012) (the doctrine set forth in *Heck* has been extended to civil rights cases challenging parole and probation revocations).[8]

---

[7] In *Williams*, the plaintiff instituted a § 1983 action against his parole officer following the revocation of his parole, alleging the officer "seized him without probable cause and caused him to be arrested and falsely incarcerated."  453 F.3d at 176.  The parole officer arrested plaintiff for technical violations of his parole including his failure to obtain approval to change his employment and residence.  453 F.3d at 175.  The United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of the case because a finding for plaintiff on his § 1983 claims against the parole officer would necessarily demonstrate the invalidity of the revocation decision, which had not been rendered invalid.  453 F.3d at 177.

[8] *See McKinney v. Pennsylvania Bd. of Prob. & Parole*, 405 Fed. Appx. 646, 647 (3d Cir. 2010) (holding that McKinney's claims that he had been imprisoned beyond the maximum terms of his sentences for state convictions and parole violations and that the defendants violated his rights by

Plaintiffs' Section 1983 claim regarding the use of false or improper allegations as evidence fails because it would "necessarily demonstrate the invalidity of the Parole Board's decision to revoke [their] parole." *Id.* The Complaint avers that false allegations were filed against Wyatt and McNeil, which resulted in them being placed back into prison. Plaintiffs, however, do not allege that the Board's decision has been favorably terminated or rendered invalid.[9] *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (*Heck* applied to litigant's claims "asserting that fabricated evidence was used to pursue a criminal judgment"); *Curry v. Yachera*, 835 F.3d 373, 378-79 (3d Cir. 2016) (holding that plaintiff's failure to allege that his conviction was declared invalid warranted dismissal of his Section 1983 claim); *see also Brown v. City of Phila.*, 339 Fed. Appx. 143, 145 (3d Cir. 2009) (noting that a Section 1983 claim "based on an allegedly unconstitutional conviction or sentence does not accrue until the invalidation of that conviction or sentence."); *White v. Gittens*, 121 F.3d 803, 807 (1st Cir. 1997) (concluding that § 1983 claim based on revocation of parole was barred by *Heck*; "[a] favorable

---

incorrectly calculating his maximum sentence and by failing to conduct a parole revocation or parole hearing when they revoked his parole and continued to detain him were barred by *Heck* "because success on his claims would necessarily imply the invalidity of the fact and the duration of his state confinement, which have not been elsewhere invalidated"); *Connolly v. Arroyo*, 293 Fed. Appx. 175, 177–78 (3d Cir. 2008) (holding that Connolly's claims relating to the parole-revocation process, including a claim that he was denied a timely revocation hearing, were barred by *Heck*); *Hess v. Chronister*, 247 Fed. Appx. 377, 380 (3d Cir. 2007) (concluding that Hess's claims that the defendants conspired to violate his rights by holding him on a detainer without notifying him of the charges against him or holding a parole-revocation hearing were barred by *Heck* because success on Hess's claims would necessarily imply that his confinement was invalid); *Worthy v. N.J. State Parole Board*, 184 Fed. Appx. 262, 264 & 266 (3d Cir. 2006) (affirming dismissal on the basis of *Heck* of claims arising from parole revocation proceedings for damages and declaratory relief including a claim that the defendants did not hold a final revocation hearing).

[9] In fact, the Declaration in Support of a Preliminary Injunction and TRO indicates that Wyatt received a guilty verdict from the Department of Probation and Parole on December 10, 2019. (ECF No. 16 at 6.)

decision in the § 1983 proceeding would necessarily call into question the validity of the state's

decree revoking [plaintiff's] parole and ordering him back to prison. Heck therefore applies, and

the § 1983 action is not cognizable in a federal court").  Plaintiffs' Section 1983 claim

improperly challenges the fact of their confinement based on allegedly defective parole

revocation procedures, when the proper vehicle is a petition for writ of habeas corpus.  *Williams*,

453 F.3d at 177; *see also Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997) ("Few things

implicate the validity of continued confinement more directly than the allegedly improper denial

of parole.").

        Accordingly, because the Parole Board's decision has not been rendered invalid, Wyatt

and McNeil may not attack it via a § 1983 action.  *See Williams*, 453 F.3d at 177.  All of

Plaintiffs' due process claims under Section 1983 regarding the parole revocation proceedings

shall be denied without prejudice to refiling if either of their parole revocations are ultimately

invalidated.  *See Brown*, 339 Fed. Appx. at 145-46 (3d Cir. 2009) (holding that a Section 1983

claim dismissed under the favorable termination rule should be done without prejudice).

### G.  Claims Regarding "Act 122"

        Plaintiffs aver that "Wetzel and the Department of Parole and Probation violated . . . Bill

100 Act 122 that states that technical parole violators should only be diverted to Community

Correctional Centers, Parole Violator Centers, County Contracted Jails, or ankle monitors."

(ECF No. 2 at 23.)

        Senate Bill 100, known as Act 122 of 2012, was passed and was signed into law on July

5, 2012.  *See Gerber v. Campbell*, Civ. A. No. 14-674, 2015 WL 3952765, at *12 (M.D. Pa. June

18, 2015) (citing *Barge v. Pennsylvania Bd. of Prob. & Parole*, 96 A.3d 360, 361 (Pa. 2014)).

Among other matters, the Act amended Title 61 of the Pennsylvania Consolidated Statutes

14

(Prisons and Parole) to allow technical violators, under certain conditions, to be detained and recommitted to a community corrections center or a community corrections facility.  The precise statute at issue here is 61 Pa.C.S.A. § 6138(c), which provides, in pertinent part, as follows:

(c) Technical violators.--

(1) Subject to paragraph (1.3), a parolee under the jurisdiction of the board who violates the terms and conditions of his parole . . . may be detained pending a hearing before the board or waiver of the hearing or recommitted after a hearing before the board or a waiver of the hearing. Detention and recommitment under this paragraph shall be in a community corrections center, community corrections facility or any secured facility operated or contracted by the department.

.   .   .

(1.2) Notwithstanding paragraph (1) and subject to paragraph (1.3), a parolee under the jurisdiction of the board who violates the terms and conditions of his parole, other than a convicted violator who has parole revoked under subsection (a), may be arrested and detained without revocation of parole under a program to impose swift, predictable and brief sanctions. The program shall provide for immediate detention in a community corrections center, community corrections facility or any secured facility operated or contracted by the department for a period not to exceed seven days. The board shall adopt procedures governing appropriate detention under this paragraph, including identifying which offenders are eligible for the program and providing warnings to parolees to clearly communicate expectations and consequences.

(1.3) If the board determines that one of the following conditions is present regarding a parolee who violates the terms and conditions of parole, the parolee shall not be eligible for detention under paragraph (1.2) and **shall be detained in or recommitted to a State correctional institution or contracted county jail**:

.   .   .

(ii) The violation involved **assaultive behavior** or included a credible threat to cause bodily injury to another.

.   .   .

(v) **There exists an identifiable threat to public safety**, and the parolee cannot be safely diverted to a community corrections center, community

> corrections facility or any secured facility operated or contracted by the department. . ..

61 Pa. Stat. and Cons. Stat. Ann. § 6138 (West) (bolded emphasis added).

Wyatt asserts in his Complaint that he was arrested by Garner on a "false" allegation of assault. (ECF No. 2 at 16-17, 22-23; ECF No. 16 at 5.)  Further, according to the information supplied by Wyatt in his Declaration, Wyatt received a guilty verdict from the Department of Probation and Parole which indicated that he was "considered a threat to the safety of the community." (ECF No. 16 at 6.)  Based on this information, it appears to the Court that the Board of Probation and Parole was justified in recommitting Wyatt to a state correctional institution, namely SCI-Phoenix.  61 Pa.C.S.A. § 6138(c)(1.3)(ii) and (v).  Accordingly, based on the information as to Wyatt, his claim that Wetzel and the Department of Parole and Probation violated Act 122, is not plausible.  As for McNeil, because this Court lacks information concerning the details of his recommitment at this time, his claim is not plausible.[10]

Regardless, even if this Court were to assume that the statute at issue was violated, a violation of state law generally does not equate to a federal constitutional violation.  *See Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988)

---

[10] The allegations concerning McNeil's recommitment are vague.  McNeil avers that he was incarcerated on a "false complaint" (ECF No. 2 at 19), but the Court has no further information regarding the specific facts and circumstances of his case.  On this basis alone, this claim is not plausible.  A complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8.  *Garrett v. Wexford Health*, 938 F.3d  69, 91 (3d Cir. 2019).  To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011).  The Third Circuit recently explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted).

("violation of state law is not a denial of due process of law")).  Moreover, to the extent Plaintiffs assert a constitutional violation because they were housed at a state facility, the Court notes that "an inmate does not have the right to 'be placed in any particular prison.'"  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 225 (3d Cir. 2015) (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).  Furthermore, for the reasons provided below, Plaintiffs have not set forth a plausible equal protection claim.

With respect to the assertion of an equal protection violation, the Complaint avers that Wetzel and the Department of Parole and Probation are not applying Act 122 to Plaintiffs and other technical parole violators as the law instructs them to do. (ECF No. 2 at 23.)  (*Id.*)  Wyatt and McNeil assert that Defendants placed them in prison as a means of punishment to get around the implication of Act 122.  (*Id.*)

To state a claim for equal protection, a plaintiff must allege facts showing that he received different treatment than others similarly situated and that the treatment was due to membership in a protected class.  *See Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).  "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

Plaintiffs' conclusory allegation, which forms the sole basis for their equal protection claim, amounts to nothing more than a formulaic recitation of the elements of an equal protection claim.  Plaintiffs have not alleged any specific facts demonstrating how Wetzel purposely

17

discriminated against them.  Nor have Plaintiffs alleged any specific facts regarding who would

be considered similarly situated parties nor have they alleged that they were the only inmates to

have been subjected to inappropriate treatment.  Thus, the Complaint does not state an equal

protection claim.  *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011)

("Without more specific factual allegations as to the allegedly similarly situated parties, he has

not made plausible the conclusion that those parties exist and that they are like him in all relevant

aspects."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (finding equal protection

claim not pled where plaintiff failed to "allege facts showing that he was similarly situated to the

inmates who received wheelchair footrests, crutches and canes, or that there was no rational basis

for his different treatment").

### H.  Eighth Amendment Claims[11]

The Complaint avers that Plaintiffs were housed in a solitary confinement unit due to

overcrowding.  (ECF No. 2 at 17.)  The Complaint further asserts that "[p]laintiffs and other

parolees [were] denied yard for weeks" and "denied mental health out of cell programming."

(*Id.* at 18.)  Specifically, Wyatt alleges that he was housed in cells with very little to no light

coming through the cell windows, was served cold food in insufficient portions, and had no

bedding.  (*Id.* at 18.)  The Complaint also avers that "the defendant allowed the housing of

seriously mentally ill prisoners to be housed in cells with other Parolees [who were] detoxing off

---

[11] "[T]he favorable termination rule does not apply to claims that implicate only the conditions, and not the fact or duration, of a prisoner's incarceration."  *Torres v. Fauver*, 292 F.3d 141, 143 (3d Cir. 2002).  Wyatt and McNeil's claims about being denied recreation, confined in the solitary unit, served cold food or inadequate meals, or claims related to inadequate lighting and bedding, implicate only the conditions of their confinement and are not subject to the favorable-termination rule of *Heck*.

of dangerous drugs" which allegedly caused "mentally ill parolees [to be] violently assaulted by the detoxing parolee." (*Id.*)

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As it appears from the Complaint that Wyatt and McNeil are technical parole violators who were previously convicted prisoners, their conditions of confinement claim is properly analyzed under the Eighth Amendment.

To establish an Eighth Amendment violation based on conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835.

The Complaint fails to state an Eighth Amendment claim upon which relief can be granted based on the allegations of placement in the solitary confinement unit. "[S]olitary confinement is not per se violative of the Eighth Amendment." *Dixon v. Larson*, Civ. A. No. 15-00425, 2016 WL 749234, at *5 (M.D. Pa. Feb. 23, 2016) (citing *Green v. Coleman*, 575 Fed. Appx. 44, 47 (3d Cir. 2014) (affirming dismissal of Eighth Amendment claim of prisoner who alleged that he had been in solitary confinement since October 2009, and that it was causing him

psychological distress but who did not allege he was deprived of basic needs); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (administrative segregation for fifteen months found not to violated the Eighth Amendment).  Plaintiffs' conclusory allegations regarding placement in the solitary confinement unit fail to indicate the length of time spent in that unit, and the allegations fail to demonstrate that Plaintiffs were deprived of their basic needs as a result of being placed in that particular unit.

Plaintiffs' allegations about cold food in small portions do not set forth a plausible claim. A constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) and *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Id* at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).  "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being." *Duran*, 923 F. Supp. 2d at 720 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora v. Camden Cty.*, Civ. A. No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)).

The sparse allegations in the Complaint do not satisfy the objective requirement. "[I]solated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." *Duran*, 923 F. Supp.2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell*. So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . . .") (citing *Nickles v. Taylor*, Civ. A. Nos. 09-313, 09-557, 09-952, 2010 WL 1949447, at \*5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities."). Plaintiffs do not allege that they were malnourished, that others became ill due to systemic problems with inadequate or spoiled food, or that a significant portion of their diet consisted of such food.

Plaintiffs have also failed to allege the subjective component of the *Stevenson* test. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Plaintiffs have not offered any facts from which a court could reasonably infer deliberate indifference by anyone at SCI-Phoenix with respect to food quality or to the minimum requirements of providing a non-harmful diet based on the allegations in the Complaint. Without any allegation necessary to demonstrate substantial nutritional deprivation on a recurring basis or subjective recklessness, the claims are implausible for this additional reason.

With regard to exercise, it appears that Plaintiffs allege a reduction in the recreation schedule as opposed to a complete elimination of exercise for inmates. While the denial of exercise may, in certain instances, rise to the level of an Eighth Amendment violation, Plaintiffs have not provided any specific factual allegations about the conditions to which they were subjected or explained why they rise to the level of a constitutional violation. *See Bacon v.*

*Minner*, 229 F. App'x 96, 99 (3d Cir. 2007) (citing Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir.1992) (forty-five minutes of exercise per week not constitutionally infirm); *see also Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding denial of outdoor recreation for thirteen days not cruel and unusual punishment).

Plaintiffs' Complaint is based on entirely conclusory phrases which indicate their belief that their constitutional rights were violated in connection with matters relating to recreation, food temperature, nutrition, lighting, and bedding while they were incarcerated at SCI-Phoenix. However, Plaintiffs have not stated a plausible constitutional violation because they have not alleged that these alleged conditions amounted to punishment, deprived them of a basic need, or otherwise caused them harm. *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.")

Plaintiffs have also not alleged facts explaining how Wetzel was involved in or responsible for allegedly subjecting them to cruel and unusual punishment or otherwise violating their rights. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode*, 845 F.2d at 1207; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Iqbal*, 556 U.S. at 676 (explaining that " [b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Although a denial of recreation, inadequate lighting, lack of adequate nutrition or inadequate bedding could amount to a

constitutional violation, Wyatt and McNeil have not provided enough factual allegations about the conditions to which they were subjected to render their claims plausible.

### I.   Claim Involving Lack of Medical Treatment

The Complaint avers that Wyatt became very depressed and was denied the opportunity to see mental health staff.[12]  (ECF No. 2 at 23.)  At the outset, the Court notes that this allegation does not attribute any conduct involving medical treatment to any individual defendant.  Even construing Plaintiffs' Complaint liberally, this pleading deficiency makes it challenging to screen the Complaint and would make it difficult for a defendant to meaningfully respond to the pleading.  *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims).  There are no specific actions (or inactions) attributable to any individual defendant.

Wyatt should be mindful that in order to state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has

---

[12]  Wyatt's allegations, although sparse, are inconsistent.  Other allegations in the Complaint demonstrate that Wyatt did in fact receive medical treatment from the medical department with respect to his mental health.  Specifically, Wyatt averred that he discussed his refusal to take certain medication with mental health staff at the prison, and the staff took him off of all of his medications, and "instructed him to file [an] action against the Parole department."  (ECF No. 2 at 19.)

been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015) (per curiam) ("Delay or denial of medical care violates the Eighth Amendment where defendants are deliberately indifferent to a prisoner's serious medical need."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## IV.     CONCLUSION

The Court will dismiss the following claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii): (1) any claims made on behalf of any other individuals besides Wyatt and McNeil; (2) all claims for injunctive relief; (3) all claims against the Department of Probation and Parole; (4) all claims against Garner and Wetzel in their official capacities; and (5) all claims based on grievances. The Court will dismiss these claims with prejudice because any attempt at amendment would be futile. The Department of Probation and Parole will be terminated as a Defendant. Plaintiffs' due process claims will be dismissed

without prejudice.[13]  With respect to the remaining claims, Plaintiffs will be given an opportunity to file an amended complaint in the event they can cure the deficiencies noted in this Memorandum.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

Plaintiffs' Motion for Appointment of Counsel will be denied without prejudice at this time.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  Plaintiffs' Declaration in Support of Preliminary Injunction and TRO will also be denied.[14]  An appropriate Order follows.

**BY THE COURT:**


*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**

---

[13] The due process claims are dismissed without prejudice to Wyatt and McNeil filing a new case raising these claims only in the event either of their underlying parole violation convictions are reversed, vacated, or otherwise invalidated.

[14] Wyatt's Declaration in Support of Preliminary Injunction and TRO (ECF No. 16), to the extent that this declaration is interpreted as a motion, will be denied.  While the Declaration seeks injunctive relief against the Department of Probation and Parole and Garner, it also names additional individuals who are not named as defendants in this matter.  Moreover, the Declaration sets injunctive relief on the basis of new factual allegations which are not detailed in the Complaint.  Further, according to the Pennsylvania Department of Corrections Inmate/Parolee Locator, Wyatt (Parole No. 724AD) is currently on parole, having been released on February 26, 2020.  Accordingly, it appears to the Court that his request for injunctive relief has been rendered moot.  *See* Pennsylvania Department of Corrections, Parolee Locator (Parolee Nos. "724AD" (Wyatt) and "697IA" (McNeil); http://inmatelocator.cor.pa.gov (last visited May 5, 2020).  *See generally* Fed. R. Evid. 201; *Bracey v. Rendell*, Civ. A. No. 11-217E, 2012 WL 226871, at *1 n.1 (W.D. Pa. Jan. 25, 2012) (taking judicial notice of DOC inmate locator).